## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DARRYL WAYNE HOBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.  2:12-CV-2403-SLB |
| | ) | |
| CAROLYN  W.  COLVIN,  Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Darryl Wayne Hobson brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's final decision denying his application for a period of disability and disability insurance benefits ["DIB"].  Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

Mr. Hobson filed an application for a period of disability and DIB on June 1, 2009, alleging disability beginning on April 28, 2009.  (Doc. 6-3 at R.23.)[1]  His application was denied initially.  (*Id*.)  Thereafter, he requested a hearing before an Administrative Law Judge ["ALJ"], which was held on December 16, 2010.  (*Id*.)   After the hearing, the ALJ

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.   References to page numbers in the Commissioner's record are set forth as "R.___".

"conclude[d] the claimant has not been under a disability within the meaning of the Social Security Act from April 28, 2009, through the date of his decision." (*Id*.)

Mr. Hobson then requested the Appeals Council review the ALJ's decision. (*Id*. at R.19.) Thereafter, the Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision. Therefore, [it] denied [Mr. Hobson's] request for review." (*Id*. at R.1.) The ALJ's decision is the final decision of the Commissioner. (*Id*.)

Following denial of review by the Appeals Council, Mr. Hobson filed an appeal in this court.[2] (*See generally* doc. 1.)

## II.  <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "[R]eview of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must

---

[2]Plaintiff filed his appeal in this case and was granted *in forma pauperis* status in July 2012. However, the Commissioner was not served in this matter until early 2015. (*See* doc. 4.) The court is uncertain as to the reason for the delay. (*See* Staff Note, dated Feb. 10, 2015.)

scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cor. 1990)(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983))(internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)(internal quotations and citations omitted)

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability and DIB. *See* 20 C.F.R. § 404.1520(a)(1)-(2); *see also Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "The term 'disability' means – (A) [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 416(i)(1).  The

specific steps in the evaluation process are as follows:

### 1.  Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in

"substantial gainful activity."  *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).  The regulations

define "substantial gainful activity" as "work activity that is both substantial and gainful."[3]

20 C.F.R. § 404.1572.  If the claimant is working and that work is substantial gainful activity,

the Commissioner will find that the claimant is not disabled, regardless of the claimant's

medical condition or his age, education, and work experience.  20 C.F.R. § 404.1520(b).

"Under the first step, the claimant has the burden to show that [he] is not currently engaged

_____

[3]The regulations state:

(a) *Substantial work activity*.  Substantial work activity is work activity that
involves doing significant physical or mental activities.  Your work may be
substantial even if it is done on a part-time basis or if you do less, get paid less,
or have less responsibility than when you worked before.

(b) *Gainful work activity*.  Gainful work activity is work activity that you do
for pay or profit.  Work activity is gainful if it is the kind of work usually done
for pay or profit, whether or not a profit is realized.

(c) *Some other activities*.  Generally, we do not consider activities like taking
care of yourself, household tasks, hobbies, therapy, school attendance, club
activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572; 20 C.F.R. § 416.972.

in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (11th Cir. 2012).[4]

The ALJ found that Mr. Hobson had not engaged in substantial gainful activity since April 28, 2009, the alleged onset date, through January 12, 2011, the date of his decision. (Doc. 6-3 at R.25, R.31.)

### 2. Severe Impairments

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c). "An impairment can be considered as not severe only if it is a

---

[4]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a).  A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523.  A claimant has the burden to show that he has a severe impairment or combination of impairments.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Hobson had the following severe impairments:  "coronary artery disease; diabetes; and obesity."  (Doc. 6-3 at R.25.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the durational requirement and whether it is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings].  If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).  The claimant has the burden of proving that his

impairment meets or equals the criteria contained in one of the Listings.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Hobson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part404, Subpart P, Appendix 1.  (Doc. 6-3 at R.28.)

### 4.  Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that his impairment prevents him from performing his past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f).  At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [his] past relevant work.  20 C.F.R. § 404.1560(b).  "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it.  20 C.F.R. § 404.1560(b)(1).  If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled.  20 C.F.R. § 404.1560(e).  The claimant bears the burden of establishing that the impairment prevents him from performing his past relevant work.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Hobson had the following RFC:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes, or scaffolds and occasionally climb ramps or stairs.  He can frequently balance, stoop, kneel, crouch,

and crawl.  The claimant should avoid concentrated exposure to extreme heat or cold and humidity.

(Doc. 6-3 at R.28.)  Based on this RFC and the testimony of the vocational expert [VE], the ALJ found that Mr. Hobson could not perform his past relevant work as a truck driver.  (*Id.* at R.30.)

### 5.  Other Work in the National Economy

If the claimant establishes that he is unable to perform his past relevant work, the Commissioner must show that the claimant – in light of his RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy.  *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. § 404.1520(c)(1).   The regulation provides:

> If we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience.  Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1).  If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled.  20 C.F.R. § 404.1520(f).  If, however, the Commissioner finds that the claimant can perform other work, the claimant has the burden to prove he in not capable of performing such other work.

The ALJ found Mr. Hobson was 46 years old on the onset date and he had at least a high school education and could communicate in English.  (Doc. 6-3 at R.30.)  Based on his age, education, and RFC, the ALJ found Mr. Hobson could perform the requirements of representative occupations identified by a vocations expert [VE], which included "delivery person; service station attendant; night watchman; gate tender; assembler; oil filter inspector; bearing ring assembler; and packager."  (*Id.*)  Based on this finding the ALJ determined that Mr. Hobson had not been under a disability from the alleged onset date, April 28, 2009, through the date of his decision, January 12, 2011.  (*Id.* at 31.)

## B.  MR. HOBSON'S ISSUES ON APPEAL

Mr. Hobson raises two specific issues in appeal:  (1) the ALJ erred in failing to find Mr. Hobson was limited in the manner set forth in his treating physician's office note, and (2) the ALJ's opinion is not based on substantial evidence because the hypothetical to the VE did not include the limitations set forth in his treating physician's office note.  For the reasons set forth below, the court finds the Commissioner's decision is due to be affirmed.

### 1.  Dr. Livingston's Opinion

On March 2, 2010, Mr. Hobson was seen by his treating physician, Wiley K. Livingston, Jr., M.D., "to have a form filled out for an application for disability."  (Doc. 6-11 at R.332.)  On this day, Dr. Livingston noted:

> [Mr. Hobson] has type I diabetes mellitus,[5] poorly-controlled and is on an insulin pump.  Sugars are in the 3[00s] and 400s.  Today, it is 320 . . . .  He has a history of hypertension, hyperlipidemia and severe fatigue.  He is obese with weight of 290.  His last echocardiogram was August 2009 showing an ejection fraction of 50-55%.  His blood pressures have looked fairly good.  His last A1c was 9.00 in September and will check labs today.  He is not anemic.

> He is easily fatigued.  He cannot climb stairs.  I do not want him around hazard[ous] machinery.  He can stand and walk perhaps 2 hours in an 8 hour work day.

> He has been having chest discomfort, but discussed with Dr. Hess recently and it was felt that there was no need to pursue it.

(*Id*. [footnote added].)  Based on this treatment note, Mr. Hobson argues the ALJ's RFC should have included limitations on his ability to stand or walk in a eight-hour day, additional rest periods, limitations on his ability to climb stairs, and exclusion of work around hazardous machinery.

"The Secretary, and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly." *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir.1977)).  The ALJ considers medical opinions together with the rest of the relevant evidence received in making his determination.  *See* C.F.R. § 404.1520b.  The regulations provide specific criteria for evaluating medical opinions from acceptable medical sources: (1) examining relationship; (2) treatment relationship; (3) supportability; (4)

---

[5]Other records from Dr. Livingston indicate that Mr. Hobson has type 2 diabetes mellitus.  (*See* doc. 6-11 at R.321, R.330.)

10

consistency; (5) specialization; and (6) "other factors."[6]  *See* C.F. R. § 404.1527(c).  "The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B Nov. 1981)(citing 20 C.F.R. § 404.1526).[7]

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987) (per curiam)).  "An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled.  It must be supported by clinical or laboratory findings."  *Oldham*, 660 F.2d at 1084.  Accordingly, with good cause, the ALJ may disregard a treating physician's opinion "but [he] 'must clearly articulate [the] reasons for doing so,'"

_____

[6]With regard to "other factors," the regulation states:

> When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.  For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. §  404.1527(c)(6).

[7]Decisions issued by a Unit B panel of the former Fifth Circuit are binding precedent. *See Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

because "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). However, the ALJ "will not give any special significance to the ***source*** of an opinion" as to a claimant's RFC. 20 C.F.R. § 404.1527(d)(2)-(3)(emphasis added).

The Commissioner notes that none of the jobs identified by the VE include work around hazardous machinery. Therefore, the court finds any error in the failure to include this limitation in the ALJ's RFC was harmless.

As with the other limitations, the court notes Dr. Livingston's other treatment notes do not indicate Mr. Hobson was functionally limited in his ability to stand/walk, climb stairs, and/or work around hazardous machinery. (*See* doc. 6-9 at R.244-45; doc. 6-11 at R. 329-30, R.338-39, R.343, R.346, R.348, R.350, R.353.) Some of these other treatment notes indicate that Mr. Hobson complained of fatigue, (*see*, *e.g.*, doc. 6-9 at R.329, R.339); however, Dr. Livingston noted that "this may simply be due to the high sugars" resulting from Mr. Hobson's diabetes, which was poorly controlled, (*see id.* at R.329). The ALJ found that Mr. Hobson was noncompliant with "diet, exercise, and use of insulin." (Doc. 6-3 at R.29.) Moreover, the ALJ found Mr. Hobson's testimony regarding the intensity, persistence, and limiting effects of his subjective symptoms, like fatigue, was "not credible to the extent [it was] inconsistent with [the ALJ's] residual functional capacity assessment." (*Id.* at R.28.) Mr. Hobson does not challenge this finding. Therefore, to the extent Dr. Livingston's

12

opinion is based on Mr. Hobson's subjective complaints, the ALJ's determination of Mr. Hobson's credibility provides support for his limiting the weight accorded Dr. Livingston's opinion of Mr. Hobson's residual functional capacity. *See Majkut v. Commissioner of Social Sec.*, 394 Fed. Appx. 660, 664 (11th Cir. 2010).

Based on the foregoing, the court finds the record contains substantial evidence in support of the ALJ's determination of Mr. Hobson's RFC. The court finds no reversible error in his decision not to include the limitations set forth in Dr. Livingston's treatment note of March 2, 2010.

## 2. VOCATIONAL EXPERT TESTIMONY

Mr. Hobson contends:

> In the present case, Plaintiff's treating physician, Dr. Livingston noted several limitations including "**He is easily fatigued. He cannot climb stairs. I do not want him around hazardous machinery. He can stand and walk perhaps 2 hours in an 8 hour work day**." (R. 332, emphasis added). Yet, the ALJ failed to pose a hypothetical question which included these significant limitations. (R. 51-54). In making his conclusions, the ALJ fails to even mention these limitations, much less include them in his final residual functional capacity assessment. (R. 28).

(Doc. 8 at 9.)

In this case, the ALJ's hypothetical questions to the VE contained each and every limitation he found. (*Compare* doc. 6-3 at R.28 *with id*. at R.51-52.) At the hearing, after reviewing Mr. Hobson's past relevant work, the ALJ asked the VE:

> Q. . . . For the first hypothetical, I'd like for you to assume an individual who is a younger individual with a 12th grade education limited as follows: limited to a range of light exertion; with no more than occasional

13

climbing ramps and stairs; never climbing ladders, ropes, and scaffolds; no more than frequent balancing, stooping, kneeling, crouching, [and] crawling; must avoid concentrated exposure to extreme cold, heat, [and] humidity.

Given these limitations could this individual perform past work?

A.  No, he could not. . . .

Q.  Is there any other work in the national or local economy such an individual could perform?

A.  Yes, at the light level, I think [he] should be able to perform a delivery man especially a deliverer . . . of pizza, flowers, automobile parts.  He would also be able to work as an automobile service station attendant, work as a parking lot attendant.  The claimant could perform a variety of other jobs including jobs such as night watchman, gate tender.  He could also perform factory jobs.  Examples would be jobs such as a . . . assembler, . . . an oil filter inspector, hearing ring . . . assembler.

. . .

A.  I think he could perform jobs such as helium railing [phonetic] machine operator . . . .  Also prepaid packager . . . .  I believe these are examples of the kinds of light jobs he could perform.  . . .

(Doc. 6-3 at R.51-52.)  In his decision, the ALJ found Mr. Hobson had the RFC "to perform light work . . . except he can never climb ladders, ropes or scaffolds and [can] occasionally climb ramps or stairs.  He can frequently balance, stoop, kneel, crouch, and crawl.  The claimant should avoid concentrated exposure to extreme heat or cold and humidity."  *Id*. at R.28.  All of these limitations and restrictions were included in the ALJ's hypothetical questions to the VE.  Therefore, the court finds no reversible error.

14

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed.   An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 9th day of September, 2015.


_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE